UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Kyle Pumariega, *Plaintiff*, v. Basis Global Technologies, Inc., *Defendant*. | No. 23 CV 16636 <br><br> Judge Lindsay C. Jenkins |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Kyle Pumariega sued his former employer, Defendant Basis Global Technologies, Inc. (Basis), alleging different varieties of religious discrimination in violation of the Civil Rights Act of 1964 (Title VII), Florida Civil Rights Act (FCRA), and Illinois Human Rights Act (IHRA). Basis moved to dismiss Pumariega's Second Amended complaint entirely for failure to state a claim under Federal Rule of Procedure 12(b)(6). [Dkt. 45.] For the reasons stated below, Basis's motion to dismiss is granted in part and denied in part.

I. **Legal Standard**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the plaintiff's claims. The Court takes well-pleaded factual allegations as true and draws reasonable inferences in the plaintiff's favor. *Reardon v. Danley*, 74 F.4th 825, 827 (7th Cir. 2023); *Choice v. Kohn L. Firm, S.C.*, 77 F.4th 636, 638 (7th Cir. 2023). "To survive a motion to dismiss under Rule 12(b)(6), plaintiff's complaint must allege facts which, when taken as true, plausibly suggest that the plaintiff has a right to

relief, raising that possibility above a speculative level." *Cochran v. Ill. State Toll Highway Auth.*, 828 F.3d 597, 599 (7th Cir. 2016) (cleaned up).

## II.   Background[1]

Pumariega worked remotely from Florida for an Illinois-based company, Basis. [Dkt. 37, ¶¶3, 5.] In November 2022, Pumariega received an email from Basis's Diversity, Equity, and Inclusion (DEI) Department announcing an upcoming virtual, mandatory training on December 6, 2022. [*Id.*, ¶19–20.] The email laid out the agenda which included (1) reviewing "LGBTQ+ terminology related to sexual orientation, gender identity, and expression – including words to avoid;" (2) discussing "a variety of gender-expansive pronouns that [one] may encounter in the workplace;" and (3) considering "a variety of ways that [one] can demonstrate … allyship to folks who are transgender and/or nonbinary, as well as resources to help … learn more." [*Id.*, ¶19.] Pumariega, who is a devout Christian, did not request a religious accommodation to be excused from the event and attended the DEI training. [*Id.*, ¶20.]

During the training presenters discussed gender identity, sexuality, sexual orientation as a scale, use of inclusive language, and preferred pronouns. [*Id.*, ¶21.] Employees were instructed to use inclusive language when referring to groups in the workplace, [*id.*, ¶22], and to consider where they fell on the sexual orientation scale—

---

[1] The following factual allegations are taken from Pumariega's Second Amended Complaint [dkt. 37] and are accepted as true for the purposes of the motion. *Smith v. First Hosp. Lab'ys, Inc.*, 77 F.4th 603, 607 (7th Cir. 2023). In setting forth the facts at the pleading stage, the Court does not vouch for their accuracy. *See Goldberg v. United States*, 881 F.3d 529, 531 (7th Cir. 2018).

presented as a continuum stretching from "straight" to "gay/lesbian," [*id.*, ¶45]. In Pumariega's view, these concepts conflict with his Christian ideology, specifically the belief that there is no "sexuality scale" and that romantic relationships should only be between a man and a woman. [*Id.*, ¶¶45–46.]

In approximately February 2023, Pumariega submitted anonymous feedback to the DEI team about the December training. [*Id.*, ¶25.] Without disclosing his religious beliefs or indicating a religious objection to the training, Pumariega explained that, in his opinion, the topics discussed were inappropriate for the workplace. [*Id.*]

In a May 2023 meeting with his supervisor, Drew Schuch, Pumariega revealed his Christian beliefs, expressed that the mandatory training conflicted with those beliefs, and requested an accommodation to skip future mandatory DEI trainings. [*Id.*, ¶26.] Schuch assured Pumariega that Basis could not fire him on account of his religious beliefs and directed him to discuss the issue with Cassie Clark, Basis's Manager of Talent Partners. [*Id.*, ¶27.]

On June 1, 2023, the DEI team sent a company-wide email announcing various activities for Pride Month, beginning with Drag Brunch Trivia on June 16, 2023. [*Id.*, ¶28.] Pumariega believed these events were mandatory. [*Id.*, ¶29.] The same day Pumariega contacted Clark asking to set up a call with the appropriate person to address his concerns about discussing sexuality in the workplace. [*Id.*, ¶31.] He did not reveal his religious objection to these discussions or request a religious

3

accommodation. [*Id.*] Clark directed him to Alyssa Dietch, Basis's Talent Relations Specialist, and the two spoke on June 6, 2023. [*Id.*, ¶¶31–32.]

Pumariega told Dietch about his religious beliefs, explained the DEI events—the mandatory December 2022 training and planned Pride Month events in June—conflicted with those beliefs, and he should not be required to attend. [*Id.*, ¶32-34.] In addition, he requested a meeting with Basis's executive team and DEI team to discuss his view that these types of events were not appropriate. [*Id.*, ¶¶34–35.]

On June 15, 2023, before any Pride Month events, Pumariega was fired.[2] [*Id.*, ¶36.]

## III. Analysis

### A. Religious Discrimination and Wrongful Termination Claims

Pumariega brings claims for "religious discrimination" and "wrongful termination" under Title VII, FCRA and IHRA. Drawing all reasonable inferences in his favor, *Reardon*, 74 F.4th at 827, the gist of these claims is that Basis fired him on account of his Christian beliefs and, in doing so, intentionally discriminated against him on account of his religion.

As relevant here, Title VII makes it unlawful for an employer to "discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's … religion." 42 U.S.C. § 2000e-2(a).

---

[2] It is unclear from Pumariega's Second Amended Complaint [dkt. 37] whether the first Pride Month event was scheduled for June 15 or June 16, but this inconsistency is irrelevant because regardless, Pumariega was fired before any Pride Month events occurred. [*Id.*, ¶¶28, 36.]

4

For his claims to survive a motion to dismiss, all Pumariega must allege is that he was subjected to an adverse employment action because of his religion. *See Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1028 (7th Cir. 2013); *Moranski v. Gen. Motors Corp.*, 433 F.3d 537, 540–41 (7th Cir. 2005); *Haymon v. Metra*, 2020 WL 1548953, at *7 (N.D. Ill. Mar. 31, 2020). He does not need to allege facts establishing a *prima facie* case of discrimination. *Luevano*, 722 F.3d at 1028.

Pumariega met this requirement. He alleges that Basis fired him because of his sincerely held religious beliefs. [Dkt. 37, ¶¶58, 77.] Taking Pumariega's allegations as true, Basis knew about his Christian beliefs and fired him days after he complained about DEI training on that basis and requested an accommodation. [*Id.*, ¶¶26, 32–36.] At the motion to dismiss stage, that is sufficient.

Even so, the same allegations support both Pumariega's religious discrimination and wrongful termination claims, and he seeks the same relief for both. He also does not offer a distinct legal framework for each claim, leading to the conclusion that the two claims are duplicative, not merely pled in the alternative. *See, e.g.*, *Gociman v. Loyola Univ. of Chicago*, 41 F.4th 873, 887 (7th Cir. 2022) (explaining the permissibility of pleading inconsistent theories such as breach of contract and unjust enrichment in the alternative); *see also Lansing v. Carroll*, 2012 WL 4759241, at *1 (N.D. Ill. Oct. 5, 2012) ("One count may be dismissed as duplicative of another where the parties, claims, facts and requested relief are substantially the same." (citation and internal quotation marks omitted)).

Because courts employ the phrase "religious discrimination" when discussing these sorts of claims under Title VII and parallel state laws, Pumariega's "wrongful termination" claims under Title VII, FCRA, and IHRA (Counts III, VII, and XI) are dismissed without prejudice as duplicative. *See Wilbur v. Corr. Servs. Corp.*, 393 F.3d 1192, 1195 (11th Cir. 2004) (explaining that because the FCRA "was patterned after Title VII, and Florida courts have construed the act in accordance with decisions of federal courts interpreting Title VII" separate analysis is unnecessary); *see also Thomas v. Miami Dade Pub. Health Tr.*, 369 F. App'x 19, 21 (11th Cir. 2010) (same); *Reed v. Freedom Mortg. Corp.*, 869 F.3d 543, 547 (7th Cir. 2017) ("Illinois courts apply the federal Title VII framework to claims of discrimination made under the Illinois Human Rights Act …").

B.  **Failure to Accommodate Claims**

To maintain his failure to accommodate claims, Pumariega must allege that "(1) the observance, practice, or belief conflicting with an employment requirement is religious in nature; (2) the employee called the religious observance, practice, or belief to the employer's attention; and (3) the religious observance, practice, or belief was the basis for the employee's discriminatory treatment." *Bube v. Aspirus Hosp., Inc.*, 108 F.4th 1017, 1019 (7th Cir. 2024). Central to a failure to accommodate claim is the employer's awareness of the employee's protected class. Pumariega must allege that he told Basis about his Christian beliefs. *See Adeyeye v. Heartland Sweeteners, LLC*, 721 F.3d 444, 449 (7th Cir. 2013). He must also identify an "employment requirement." *Bube*, 108 F.4th at 1019.

6

Pumariega's complaint dances around what "employment requirement" is at issue, citing "discussions of sexuality in the workplace." [Dkt. 37, ¶64.] The only two relevant events alleged in the complaint are (1) the December 6, 2022, mandatory DEI training and (2) the Pride Month events which he believed were mandatory. He does not allege other mandatory DEI events were planned or that Basis had a stand-alone policy requiring discussions of sexuality.

Taking those two events in turn, the December 6, 2022, mandatory DEI training was plainly an employment requirement; employees were required to affirm that they attended the training. [*Id.*, ¶20.] However, Pumariega did not notify anyone at Basis of his religious beliefs prior to that event. [*See generally id.*, ¶¶20–24.] Consequently, he cannot maintain a failure to accommodate claim based on that mandatory training. *See Adeyeye*, 721 F.3d at 449.

Turning to the Pride Week events, even accepting that Pumariega believed the events were mandatory, and therefore an "employment requirement," he was fired before any events occurred and before his accommodation request was denied. [Dkt. 37, ¶¶28–36.] While Pumariega's allegations sound in employment discrimination they are a poor fit for a failure to accommodate claim. The crux of his complaint is not that Basis failed to accommodate him; he does not allege Basis made a decision on his request one way or the other. Instead, the heart of his complaint is that he was fired after voicing his disagreement with discussions of sexuality in the workplace

and requesting an accommodation. Those allegations are cognizable under Pumariega's other causes of action.[3]

While leave to amend is freely given, because Pumariega's allegations and the timeline he lays out in his complaint are incompatible with a failure to accommodate claim, amendment would be futile. Therefore, Pumariega's failure to accommodate claims under Title VII, FCRA and IHRA (Counts II, VI, and X) are dismissed with prejudice. *Loja v. Main St. Acquisition Corp.*, 906 F.3d 680, 684–85 (7th Cir. 2018); *Wilbur*, 393 F.3d at 1195; *Reed*, 869 F.3d at 547.

### C.  Retaliation Claims

To state a retaliation claim, Pumariega must allege that he (1) "engaged in statutorily protected activity" and (2) "was subjected to an adverse employment action as a result." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 828 (7th Cir. 2014) (citation and internal quotation marks omitted).

Pumariega alleges he was fired in retaliation for his complaints about engaging or participating in discussions of sexuality at work. [Dkt. 37, ¶85.] Complaints alone do not constitute "statutorily protected activity." *Carlson*, 758 F.3d at 828. They must be "some step in opposition to a form of discrimination that the statute prohibits." *Ferrill v. Oak Creek-Franklin Joint Sch. Dist.*, 860 F.3d 494, 501 (7th Cir. 2017) (cleaned up). To qualify as protected activity the employee must root their objection

---

[3] Basis argues that Pumariega failed to allege a conflict between his religious beliefs and Basis's DEI events. However, judges are not to "dissect religious beliefs" because "it is not within the judicial function and judicial competence to inquire whether the [plaintiff] … correctly perceived the commands of their … faith." *Passarella v. Aspirus, Inc.*, 108 F.4th 1005, 1010 (7th Cir. 2024) (cleaned up).

in "[religious] discrimination" or allege "sufficient facts to raise that inference." *Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 851 (7th Cir. 2008). It doesn't matter whether the DEI trainings and Pride Month events are "*actually* prohibited by Title VII; the employee need only have a good-faith and *reasonable* belief that he is opposing unlawful conduct." *Ferrill*, 860 F.3d at 501 (citation and internal quotation marks omitted).

Pumariega adequately pled a claim of retaliation. He alleges that during the May 2023 meeting with his supervisor and the June 6, 2023, call with Dietch he explained that his objection to DEI events was founded on his membership in a protected class—being Christian. *See Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006) ("Merely complaining in general terms of discrimination[,] … without indicating a connection to a protected class or providing facts sufficient to create that inference, is insufficient."). Therefore, his complaints are "sufficient to constitute a report of discrimination under Title VII." *Andonissamy*, 547 F.3d at 851. Furthermore, Pumariega alleges that his complaints derived from his genuine belief that the DEI events conflicted with his religious beliefs, not from any personal bias. [Dkt. 37, ¶34.]

Basis's motion to dismiss Pumariega's retaliation claims is denied.

### D.     Remaining FCRA Claims

Basis argues that Pumariega's claims under the FCRA should be dismissed under Rule 12(b)(6) to failure to exhaust. Pumariega timely filed a joint charge of discrimination with the EEOC and Florida Commission on Human Relations, [dkt. 37-1], as is permitted by the Act, Florida Statues Annotated § 760.11(1) ("In lieu of

filing the complaint with the commission, a complaint under this section may be filed with the federal Equal Employment Opportunity Commission … "). About a month later, the EEOC issued a dismissal and notice of rights, granting Pumariega's request for a right to sue letter. [Dkt. 37-2 at 1.] Pumariega filed this suit within the 90-day window after receipt of the letter. [*Id.*]

Basis argues that the EEOC's right to sue letter is insufficient to exhaust Pumariega's FCRA claims. The Act provides that "[w]ithin 180 days of the filing of the complaint, the commission shall determine if there is reasonable cause to believe" the claim. Fla. Stat. Ann. § 760.11(3). If the Commission "determines there is reasonable cause to believe that a discriminatory practice has occurred" the aggrieved person is free to file suit. *Id.* at § 760.11(4). If the Commission fails to "determine whether there is reasonable cause" within 180 days the aggrieved person is also free to file suit. *Id.* at § 760.11(8)(a). However, if the Commission "determines there is not reasonable cause to believe that a violation of [the Act] … occurred" the aggrieved person is limited to requesting an administrative hearing. *Id.* at § 760.11(7).

Basis argues that because the EEOC issued its right to sue letter and Pumariega filed his complaint before the 180-day window expired, he failed to exhaust his administrative remedies.

There is some support for Basis's argument. In *Sheridan v. State Department of Health*, a Florida appellate court held that an EEOC letter which issued before the 180-day deadline for the FCRA claims was not sufficient for exhaustion purposes. 182 So. 3d 787, 792 (Fla. Dist. Ct. App. 2016). It explained that "[t]o hold otherwise would

10

potentially allow a claimant to successfully circumvent the possibility of a dismissal" by the Commission which limits the claimant to an administrative hearing. *Id.* (citation and internal quotation marks omitted).

Because a "prematurely filed complaint does not, by itself, divest the Commission of jurisdiction" though, dismissal is not the only appropriate result. *Id.* at 794. The *Sheridan* court suggested that where the exhaustion issue reaches the courts before the expiration of the 180-day period "the appropriate disposition is abatement of the action until the cause matures." *Id.* In contrast, where the 180-day period has already expired and there is record evidence that the Commission made no determination of cause within the period, "premature filing … [is] … cured by the passage of time" and there is no exhaustion issue. *Id.* at 795.

Unlike *Sheridan* which was in a motion for summary judgment posture, there is no evidence in this case of a response from the Commission. Nonetheless, like in *Smith v. Lakeview Center Inc.*, the Court will "assume[] from the parties' silence" and from lack of contrary representations in the complaint and motion to dismiss briefing "that the [Commission] did not issue a timely 'no cause' determination." 2024 WL 2117753, at *3 n.8 (N.D. Fla. May 10, 2024). If the Court is mistaken, the parties are directed to file the communication on the docket by November 1, 2024.

Basis's motion to dismiss on exhaustion grounds is denied.[4]

---

[4] Some Florida courts have referred to exhaustion of administrative remedies under the FCRA as "a jurisdictional prerequisite to filing an FCRA action," *Jones v. Bank of America*, 985 F. Supp. 2d 1320, 1324 (M.D. Fla. 2013), not merely a claims-processing rule. Although the Seventh Circuit typically treats exhaustion as an affirmative defense, not eligible for resolution on a motion to dismiss, *Salas v. Wisconsin Department of Corrections*, 493 F.3d

E.      **Remaining IHRA Claims**

Basis argues all of Pumariega's IHRA claims must be dismissed because, as a remote worker based in Florida, he does not meet the statute's definition of "employee."

The inquiry begins with the statute's text, taken as a whole. *Consumer Fin. Prot. Bureau v. Townstone Fin., Inc.*, 107 F.4th 768, 776 (7th Cir. 2024). The IHRA defines "employee" as "any individual performing services for remuneration within this State for an employer." 75 ILCS 5/2-101(A)(1)(a). In contrast, "employer" is defined, as applicable here, as "[a]ny person employing one or more employees within Illinois during 20 or more calendar weeks within the calendar year of or preceding the alleged violation." *Id.* at § 5/2-101(B)(1)(a).

Although the Court has found no Seventh Circuit or Illinois court precedent addressing this issue (and the parties identify none), the statute's plain text indicates that when determining who is covered by the statute, where the individual works matters; the location of the employer does not. The statute covers individuals working for pay within the state of Illinois regardless of where the employer is located. In that way, the statute could cover employees working remotely in Illinois for employers based elsewhere. However, there is no indication the inverse is true—that employees working remotely in other states for covered employers are covered by the statute. If that was the case, the statute could cover employees with no connection to Illinois,

---

913, 921 (7th Cir. 2007), federal courts "must defer to a state court's interpretation of the state's statute." *Laborers' Pension Fund v. Miscevic*, 880 F.3d 927, 934 (7th Cir. 2018). Nonetheless, given the Court's denial of Basis's motion on the merits, it need not resolve this issue.

for example those working remotely outside of Illinois for companies not based in Illinois and alleging injury from conduct occurring outside of Illinois. 775 ILCS 5/2-102(E-5) (no geographic limitation for conduct prohibited by the Act).

The situation in *Jafri v. Signal Funding LLC,* is different from Pumariega's in important ways. 2019 WL 4824883, at *1 (N.D. Ill. Oct. 1, 2019), *aff'd*, 2022 WL 17718429 (7th Cir. Dec. 15, 2022) (affirming subsequent summary judgment ruling but not addressing issue of out-of-state employees). Jafri worked in Illinois for an Illinois-based employer until she was transferred to Miami by another employer. *Id.* While the court denied Jafri's IHRA claim on administrative exhaustion grounds, it went on to discuss whether Jafri qualified as an employee under the Act. *Id.* at *3. She alleged that after moving to Miami she continued to serve in her same roles for her Illinois employer and, based on this allegation, the court found it "plausible to infer that Jafri continued to perform some work for Defendants in Illinois even after she relocated." *Id.* However, there was no allegation that Jafri worked *remotely* for her Illinois employer, and it would be unreasonable to assume the court made that inference when it reached its conclusion. After all, the court used the phrase "work for Defendants *in Illinois*," not "work remotely for the Illinois Defendants." Even if the *Jafri* decision was binding (it is not), it is too factually distinct to be persuasive.

Pumariega's complaint contains no allegation that he performed any work in Illinois, attended training in Illinois, or even visited Basis's office in Illinois. As such, there is no support for the inference that he "perform[ed] work in Illinois," as required

13

by the plain text of the statute. *Id.*; § 5/2-101(A)(1)(a). Therefore, Pumariega's remaining IHRA claims (Counts IX and XII) are dismissed without prejudice.

## IV. Conclusion

For the reasons stated above, Basis's motion to dismiss [dkt. 37] is granted in part and denied in part. Pumariega's wrongful termination claims under Title VII, FCRA, and IHRA (Counts III, VII, and XI) are dismissed without prejudice, as are his religious discrimination and retaliation claims under IHRA (Counts IX and XII). Pumariega's failure to accommodate claims under Title VII, FRCA, and IHRA (Counts II, VI, and X) are dismissed with prejudice. Basis's motion to dismiss is otherwise denied.

Enter: 23-cv-16636
Date: October 21, 2024

_____
Lindsay C. Jenkins
United States District Judge